NO. 07-07-0317-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 8, 2008
______________________________

SAMMY SALAZ, 

                                                                                                 Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-414,821; HON. JIM BOB DARNELL, PRESIDING
_______________________________

                                                    Memorandum Opinion
                                        _______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
          Appellant, Sammy Salaz, attacks his conviction for aggravated assault through two
issues. He contends that the trial court erred in overruling his 1) request for a jury
instruction on the supposed lesser-included offense of deadly conduct, and 2) objection
to evidence of an extraneous bad act. We affirm the conviction. 
          Background
          The victim, Joshua Yelvington, went to the residence of appellant in the early
morning hours to confront his former girlfriend Misti Campo. Yelvington, who was carrying
a bat at the time, knocked on the window of appellant’s bedroom, and identified himself for
Misti. She came to the door, and the two began to argue. There is no evidence that
Yelvington ever used or threatened to use the bat. Nonetheless, appellant eventually
came out the front door with a gun in his hand. When Yelvington saw the gun, he took
several steps backward and then turned around and began to walk toward the vehicle in
which he had arrived. Yelvington then heard appellant say, “You fucked up white boy,” felt
a “touch” on the back of his head, heard a bang, and saw a flash. Two of Yelvington’s
friends took him to the hospital where he was diagnosed as having a gunshot wound to the
head. 
          Issue 1 - Instruction on Lesser-Included Offense
          Appellant argues in his first issue that the court should have submitted an instruction
on the purportedly lesser-included offense of deadly conduct. We disagree and overrule
the issue.
          To be entitled to an instruction on a lesser-included offense, some evidence must
show, among other things, that if the accused is guilty, he is guilty only of the lesser
offense. Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). Here,
appellant was charged, via the indictment, with aggravated assault. The indictment read
that he “intentionally, knowingly, and recklessly cause[d] bodily injury to JOSHUA
YELVINGTON, by shooting . . . [him] with a deadly weapon, and did then and there use a
deadly weapon, to wit: a firearm . . . .” Like assault, the crime of deadly conduct also
includes a mens rea of recklessness. Tex. Pen. Code Ann. §22.05(a) (Vernon 2003). And,
one commits that crime if, with the requisite mental state, he engages in conduct that
places another in imminent danger of serious bodily injury. Id.
          That appellant placed a handgun next to Yelvington’s head is undisputed, as is the
fact that the firearm discharged when it was so located. Appellant, however, contends that
because there was some evidence that the wound suffered was caused by Yelvington
being struck by the body of the handgun as opposed to the bullet emanating from it, he
was entitled to the instruction at issue. We disagree with that contention and will explain
why. Assuming arguendo that showing the wound was caused by striking the victim with
the firearm itself could render the crime nothing more than deadly conduct, we note that
appellant cites us to no evidence indicating that using the weapon as a club could cause
the type of wound suffered by Yelvington. Moreover, the wound was located at the center
“occipital region” of his head, or as the police officer confirmed, the rear base of the skull. 
To the extent that several witnesses testified that appellant struck his victim with the gun,
they described it as hitting Yelvington “over the head” or on the “side” of the head, not on
the back of the skull.


 So, unless we assume evidence not before us, and ignore the
medical testimony diagnosing the injury as a “[g]unshot wound to the head,” we find no
legitimate basis supporting appellant’s contention. That is, we are unable to conclude that
the wound was caused by being struck with the gun itself, as opposed to being shot, and
the record failed to illustrate that if appellant did anything, it was only deadly conduct (i.e.
simply striking appellant with the gun).
     
 
          Issue 2 - Extraneous Offense
          Next, appellant complains of the trial court’s failure to sustain his objection to
testimony of an extraneous bad act. That act consisted of his offering a witness drugs in
exchange for a ride about a month before shooting Yelvington. We overrule the issue.
          Assuming arguendo that the trial court erred, we find the error harmless. This is so
because the matter of drugs was interjected into the trial elsewhere without objection. 
Indeed, many of the witnesses were accused of being involved with narcotics at one time
or another. So, it is rather difficult to say that appellant was singled out or exposed to more
limelight by the accusation. To this, we add evidence (also before the jury) that 1)
appellant had a criminal record and had been imprisoned, 2) uncontroverted medical
testimony depicting the wound as being caused by a gun shot, and 3) the uncontested
testimony about appellant placing a firearm next to Yelvington’s head and pulling the
trigger. Simply put, we cannot conclude from the record before us that any substantial right
of appellant was jeopardized or affected by the admission of the testimony.
          Having overruled each issue, we affirm the judgment of the trial court. 
 
                                                                           Brian Quinn 
                                                                          Chief Justice
Do not publish.